DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Wilbur M. McCloud, appeals his conviction out of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On July 1, 2005, appellant was indicted on one count of aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree; one count of domestic violence in violation of R.C.2919.25(C), a misdemeanor of the second degree; one count of criminal damaging or endangering in violation of R.C. 2909.06(A)(1); and one count of assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree. On September 14, 2005, the trial court granted the State's motion to amend the charge of aggravated burglary to the lesser and included offense of burglary in violation of R.C. 2911.12, a felony of the third degree. Pursuant to plea agreement, appellant then pled guilty to all four counts. The trial court referred the matter to the Adult Probation Department for a pre-sentence investigation and report and scheduled a sentencing hearing.
 {¶ 3} At the sentencing hearing, appellant orally moved to withdraw his guilty pleas. The trial court granted the motion and scheduled the matter for trial on the four counts as originally charged in the indictment. Prior to trial, the State filed a supplemental indictment, charging appellant with a fifth count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree.
 {¶ 4} The matter proceeded to trial. The jury found appellant not guilty of aggravated burglary, domestic violence and felonious assault. The jury found appellant guilty of criminal damaging and the lesser included offense of assault. On February 17, 2006, the trial court sentenced appellant to 90 days in jail for the crime of criminal damaging and to 6 months in jail for the crime of assault, with such time to be served consecutively. The trial court stayed 60 days of appellant's sentence and placed appellant on probation for a period of one year. Appellant timely appeals, raising three assignments of error for review. This Court has consolidated the assignments of error for ease of review.
 II. ASSIGNMENT OF ERROR I "THE CONVICTION[S] OF THE APPELLANT FOR THE CHARGES OF CRIMINAL DAMAGING OR ENDANGERING AND ASSAULT IN THIS CASE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED [.]"
 ASSIGNMENT OF ERROR II "THE TRIAL COURT INCORRECTLY DENIED APPELLANT'S MOTION FOR ACQUITTAL IN VIOLATION OF [CRIM.R. 29]; SPECIFICALLY, THERE WAS NOT SUFFICIENT EVIDENCE TO PROVE THE OFFENSES OF CRIMINAL DAMAGING OR ENDANGERING OR ASSAULT BEYOND A REASONABLE DOUBT [.]"
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND IN VIOLATION OF [CRIM.R. 29(A)], ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL."
 {¶ 5} Appellant argues that his convictions for criminal damaging or endangering and assault were not supported by sufficient evidence and were against the manifest weight of the evidence.[1] This Court disagrees.
 {¶ 6} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997),78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction.State v. Jenks (1991), 61 Ohio St.3d 259, 279.
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 7} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 11. Rather,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 8} A new trial should be granted, however, only in the exceptional case, where the evidence weighs heavily against the conviction. Id. In fact, while this Court must weigh the evidence and consider the credibility of witnesses, it is well settled that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 9} This Court has stated that "[sufficiency is required to take a case to the jury [.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 10} Appellant was charged with criminal damaging or endangering in violation of R.C. 2909.06(A)(1), which states that "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent: [k]knowingly, by any means[.]"
 {¶ 11} Appellant was further convicted of assault in violation of R.C.2903.13(A), a lesser included offense of felonious assault, which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]"
 {¶ 12} R.C. 2901.22(B) states:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 13} R.C. 2901.01(A)(8) defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(4) defines "physical harm to property" as "any tangible or intangible damage to property that, in any degree, results in loss to its value or interferes with its use or enjoyment." Such harm "does not include wear and tear occasioned by normal use." Id. Finally, R.C. 2901.01(A)(3) defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 14} Tera Lisa Walls testified that appellant came to her mother's home at 887 Eller Avenue in Akron, Ohio during the late evening of June 25, 2005. She testified that her mother, baby sister and three brothers were in the home at the time, along with herself and her mother's friend, Ronald Matthews. Tera Lisa testified that appellant banged and kicked the front door. She testified that he then looked in the window and told her brothers to open the door. Tera Lisa testified that Mr. Matthews was sitting at a table beside the door window. She testified that the window was open but the screen was down.
 {¶ 15} Tera Lisa testified that no one let appellant into the house. She testified, however, that appellant jumped through the screen window and entered the house. She testified that appellant then began punching Mr. Matthews in the head and body. Tera Lisa testified that Mr. Matthews did not make any aggressive movements towards appellant.
 {¶ 16} Sergeant Jeffrey Mullins of the Akron Police Department testified that he was working security for Akron Metropolitan Housing Authority ("AMHA") on the evening of June 25, 2005 when he received a call for assistance at 887 Eller Avenue. Sgt. Mullins testified that, when he and his partner arrived at the scene, he saw a man chasing a woman. He identified the man as appellant.
 {¶ 17} Sgt. Mullins testified that he spoke with the woman, Vanessa Walls, who informed him that appellant had broken into her apartment. Sgt. Mullins went to the apartment at 887 Eller Avenue and photographed the scene, including the front window screen which had been pushed out of place inwardly. Vanessa had informed the detective that appellant had jumped through that window.
 {¶ 18} Sgt. Mullins testified that he questioned appellant who denied hitting Vanessa or Mr. Matthews. He testified that appellant further denied entering the Walls' apartment. Sgt. Mullins testified that he examined Mr. Matthews and noted a bump on his head and a red mark on his cheek. He testified that Mr. Matthews complained of "hits to his body."
 {¶ 19} Ronald Matthews testified that he was at 887 Eller Avenue on the evening of June 25, 2005, when appellant arrived at the door. Mr. Matthews testified that appellant walked back and forth to the windows, threatening the children and him. He testified that appellant "was trying to beat the door down and kick the door down[.]"
 {¶ 20} Mr. Matthews testified that he was sitting at a table near a window by the door. He testified that the window was up but the screen was down. He testified that appellant approached the window and demanded to be let into the apartment. Mr. Matthews testified that appellant told him, "I'm going to get in there. I'm going to f*** you up." Mr. Matthews testified that he ignored appellant, who suddenly jumped through the window. He testified that appellant began punching him in the back and head and kicking his side. Mr. Matthews testified that appellant then left him and followed Vanessa as she ran off with the children.
 {¶ 21} Mr. Matthews testified to certain immediate superficial injuries to his head and body. He testified that he did not go to the hospital until several days later when he was in significant pain. At the hospital, it was determined that Mr. Matthews' spleen was lacerated.
 {¶ 22} The police took photographs of Mr. Matthews' head and face. The photographs indicate discolored areas on his skin.
 {¶ 23} Anjanette Williams testified that she lives across from the Walls home. She testified that she heard a commotion on the evening of June 25, 2005. She testified that someone was screaming "open the door," so she went to investigate. Ms. Williams testified that she saw appellant at the window of 887 Eller Avenue, that he was screaming, and that he then jumped through the window. She testified that she then saw and heard appellant's arm hitting something inside the home.
 {¶ 24} Ms. Williams testified that Vanessa's children then ran to her home, and she saw Vanessa run in another direction towards the park. She testified that appellant was chasing Vanessa.
 {¶ 25} Vanessa Walls testified that she was at home at 887 Eller Avenue on the evening of June 25, 2005, when appellant appeared at her window, screaming "open up the f***ing door you mother f***ers." She testified that appellant threatened the child Maurice, saying he would "beat your ass."
 {¶ 26} Vanessa testified that Mr. Matthews was sitting at the table near a front window. She testified that appellant jumped through that window. She testified that she then gathered her children and ran to her daughter Tera Lisa's room. She testified that she began pushing her children out the window, and that she exited the home through that window as appellant entered the room. She testified that she ran to the nearby playground and appellant chased her.
 {¶ 27} Deputy Nancy Mundy of the Summit County Sheriffs Department testified that her duties include recording jail inmate phone calls. She testified that the recordings are kept in the normal course of business. She testified that she received a request from the prosecutor's office regarding appellant's phone calls out of the jail. Deputy Mundy testified as to how she identified appellant's phone calls. She authenticated State's Exhibit 16 as the compact disc that she recorded and which contained calls made by appellant from jail during the period of June 27 to June 29, 2005. She testified that the recordings were true and accurate representations of appellant's phone conversations during that period. Certain calls were played for the jury.
 {¶ 28} During several phone calls from the jail to family members and friends, appellant admitted that he went to the Walls home on June 25, 2005. Appellant further admitted that, while he did not break a window, he knocked out a window screen when he jumped through the window. Appellant also admitted during one phone call that he "beat up the guy."
 {¶ 29} Finally, appellant testified in his own defense. He testified that he went to the Walls home on the evening of June 25, 2005, because he believed that his children had not eaten. He testified that he was concerned for their welfare. Appellant testified that he knocked on the door, but that no one answered. He testified that he then looked in a window and saw his boys who did not acknowledge him.
 {¶ 30} Appellant testified that he saw a man's hand with a knife in it through the window. He testified that he then dived through the apartment window. He testified that he landed in front of the man's feet and that the man began kicking him. He recognized the man as Ronald Matthews. Appellant testified that he and Mr. Matthews scuffled until he saw others running and exiting another window. He testified that he followed those other people out the window. He admitted that he began chasing Vanessa, inquiring about the children.
 {¶ 31} There was evidence that appellant jumped through a closed screen window to enter the Walls home. The police photographs show a broken screen, pushed inwards into the home. Based on the evidence, this Court finds that a trier of fact could reasonably find that appellant knew that his jumping through the window would cause damage to the closed screen in the AMHA apartment window. For such reasons, this Court finds that the trier of fact did not lose its way and create a manifest miscarriage of justice when it convicted appellant of criminal damaging or endangering in violation of R.C. 2909.06(A)(1).
 {¶ 32} Further, there was evidence that appellant hit, kicked or otherwise "beat" Ronald Matthews and that Mr. Matthews was injured as a result. For such reasons, this Court finds that the trier of fact did not lose its way and create a manifest miscarriage of justice when it convicted appellant of assault in violation of R.C. 2903.13(A).
 {¶ 33} This Court finds that this is not the exceptional case, where the evidence weighs heavily in favor of appellant. Having found that appellant's convictions are not against the manifest weight of the evidence, this Court further necessarily finds that there was sufficient evidence to support the trial court's verdict. Appellant's assignments of error are overruled.
 III. {¶ 34} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
WHITMORE, P. J., REECE, J., CONCUR
(Reece, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] At the close of the State's case-in-case, appellant moved for judgment of acquittal pursuant to Crim.R. 29. After a discussion regarding several charges, the trial court inquired, "Okay. What about the criminal damaging?" Appellant's counsel responded, "Your Honor, we will not make a Rule 29 motion on that." Although appellant moved for judgment of acquittal on that charge after he rested, this Court finds that he waived any argument regarding sufficiency of the evidence as it relates to the charge of criminal damaging or endangering. Because this matter is ultimately disposed upon a finding of manifest weight, this Court need not further consider whether the State presented sufficient evidence on that charge.